**CUMMINS ENGINE COMPANY, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 300–87T.

United States Claims Court.

Sept. 6, 1989.

Richard J. Hiegel, New York City, for plaintiff.

Mildred L. Seidman, Michael J. Dennis, Washington, D.C., with whom was Acting Asst. Atty. Gen., James I.K. Knapp, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This action is before the court on cross-motions for summary judgment. Plaintiff, Cummins Engine Company, Inc., sought to recover an alleged overpayment of federal excise taxes in the amount of $4,531,390 plus interest for the tax quarters January 1, 1977 to December 31, 1981. Defendant claimed that plaintiff was precluded by 26 U.S.C. § 4223(b) (1982) from retroactively recomputing its excise tax liability.

## FACTS

Plaintiff is an Indiana corporation engaged in the business of purchasing, manufacturing and selling diesel engines and replacement parts for heavy-duty trucks to both wholesale and retail customers. Some of the parts purchased by plaintiff were sold to retail customers on either a single part basis, such as a stated quantity of pistons, or together with other parts in "kits." The parts from the kits were used to replace worn out or damaged parts in truck engines manufactured by plaintiff. A piston kit, for example, contained not only a piston, but also a piston pin and a retaining ring, since the latter two parts were often replaced at the same time as the piston. Plaintiff incurred minor labor costs in collecting the individual parts and placing them in a bag or box, which was reflected in plaintiff's standard inventory cost. Once packaged, the kits were carried in plaintiff's books as separate inventory items. Plaintiff was subject to manufacturers excise tax on its sale of truck parts, including the parts in the kits, under 26 U.S.C. § 4061(b)(1) (1954) (repealed 1983).

In 1958, Congress passed the Excise Tax Technical Changes Act, Pub.L. No. 85–859, 72 Stat. 1275 (codified as amended in scattered sections of 26 U.S.C.), effective January 1, 1959, which allowed manufacturers, such as plaintiff, to purchase parts free of tax and to pay excise tax at the time of sale of parts not used in the manufacture of other articles and resold without further manufacture. The kits at issue did not require further manufacture, and thus were eligible for the "purchase price" election of 26 U.S.C. § 4223(b) (1982). According to that section, plaintiff could elect to base the tax due at the time of sale on the purchase price or on the selling price of the item. The purchase price was defined as the price for which the plaintiff bought the items and the selling price as the price for

which items were sold to wholesalers or other customers. The election, however, was not mandatory. Unless plaintiff took a Section 4223(b) election, the excise tax liability would be automatically computed on the selling price of the kits. Since plaintiff's selling price for parts was invariably greater than its purchase price, the excise tax imposed would be less if plaintiff elected the "purchase price" option allowed by section 4223(b).

To take advantage of the 1958 Excise Tax Technical Changes Act, plaintiff internally approved a revised accounting procedure to be used to determine the appropriate amount of excise tax owed. This procedure was translated by plaintiff's data processing department into a mechanical method that would tax a certain part on either its purchase price or its selling price. The system followed two basic rules: 1) All kits or assemblies sold with no direct labor performed by plaintiff on any part should be taxed at the purchase price; 2) All kits or assemblies sold after direct labor had been utilized to assemble any or all of the parts were to be taxed at the selling price. Under this method, the tax on all parts, including kit parts whose standard inventory cost included any amount of direct labor, no matter how small, was computed at the selling price.

This system was applied to the kits in question as follows: After a kit was boxed, it was given a part number and carried in inventory. When the kit was sold, the transaction appeared on the monthly computer report called the Monthly Parts Sales Detail Register (Register), on which the excise tax due on that sale was computed. Since the piston kit's standard inventory cost included 51.3 cents of labor cost, the Register's computer program computed the excise tax on the selling price of the kit. The excise tax assessed on the kit sales and on all other nonexempt sales of parts was totaled in the Register each month. The aggregate amount of tax for the three months in each calendar quarter was then reported by plaintiff to the Internal Revenue Service on its excise tax return. Since the new system assumed that any item involving direct labor also required further manufacture, the kits in question were categorized as manufactured articles, subject to excise tax based on selling price.

Plaintiff allegedly intended to take the section 4223(b) purchase price election for "those parts not used in the manufacture of other articles and resold without further manufacture," as constituting a blanket election, beginning the first quarterly period after the effective date of the 1958 Act. There was, however, no documentation evidencing that fact. Under section 4223, the election was required to be made "in the return reporting the tax." Plaintiff maintained that it implemented the blanket election in each quarterly return by computing the tax for parts resold without further manufacture on the basis of the purchase price for the parts, and that the election was tacitly approved by the IRS in periodic audits. Plaintiff, however, did not make a specific election for the kits in question, and failed to file a proper form to verify its election until the quarter ending December 31, 1982.

In 1982, plaintiff's officials held a meeting in which the taxing of the kits was discussed. Outside counsel advised plaintiff that the section 4223 purchase price election was available for the parts in the kits because, by definition, they did not represent a different article, but rather a collection of individual parts that had retained their separate identity and use. Counsel noted that basing the excise tax on the purchase price instead of the selling price would afford plaintiff great monetary savings. For example, had the purchase price election of section 4223 been used for just six years, plaintiff could have saved approximately 4.5 million dollars. Plaintiff had been paying tax on the selling price for the past twenty-three years. When plaintiff realized the amount of money involved, it filed claims for a refund of overpayment of excise tax for the quarters running January 1, 1977 through December 31, 1981. Plaintiff did not file claims for earlier periods because they were barred by the statute of limitations. Plaintiff, however, failed to file amended tax returns for the quarters in question to reflect the proper

election. In its return for the quarter ending June 30, 1982, and in all subsequent returns, plaintiff, for the first time, filed a separate statement, as required by the Code, invoking the purchase price election for the parts in the kits.

In 1985, plaintiff's refund claims were disallowed by the District Director of Internal Revenue in Indianapolis, Indiana, who stated that plaintiff had not made a proper election to compute the excise tax on the purchase price. Plaintiff subsequently filed a claim in this court for $4,531,390 plus interest for the twenty quarterly periods from January 1, 1977 to December 31, 1981. Defendant responded with a motion for summary judgment, to which plaintiff cross-moved.

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). Both parties and the court are in agreement that there are no issues of material fact in dispute. The outcome of the case turns on whether plaintiff is entitled to a refund for overpayment of excise tax; the correct interpretation of section 4223; and the applicability of plaintiff's theories of "conscious choice" and "mistake" to the facts at hand.

The basis of the IRS' denial of plaintiff's refund request was that plaintiff failed to make a proper election as required by 26 U.S.C. § 4223 (1982). The statute states in pertinent part:

(b) *Computation of tax*—If the manufacture or producer referred to in subsection (a) incurs liability for tax under this chapter on his sale or use of an article referred to in subsection (a) and the tax is based on the price for which the article is sold, the article shall be treated as having been sold by him—

(1) at the price for which the article was sold by him ... or

(2) if he so elects and establishes such price to the satisfaction of the Secretary—

(A) at the price for which the article was sold to him; or

(B) at the price for which the article was sold by the person who ... is the manufacturer, producer, or importer of such article.

For purposes of this subsection, the price for which the article was sold shall be determined as provided in section 4216.... An election under paragraph (2) shall be made in the return reporting the tax applicable to the sale or use of the article, and may not be revoked.

26 U.S.C. § 4223. While plaintiff acknowledged that it did not make a timely election, plaintiff argued that an election required a conscious choice between two or more alternatives, and where such a choice was not made in plaintiff's original return it could later be made in an amended return. *See Bayley v. Commissioner,* 35 T.C. 288, 298 (1960). Plaintiff maintained that it was not aware of its option to elect between two different tax methods on its kits, and therefore could not make a conscious choice on election. Plaintiff cited three cases in support of its point. *See Mamula v. Commissioner,* 346 F.2d 1016 (9th Cir.1965); *see also Gentsch v. Goodyear Tire & Rubber Co.,* 151 F.2d 997 (6th Cir.1945); *Maid–Rite Steak Co. v. United States,* 643 F.Supp. 1162 (M.D.Pa.1986). Plaintiff argued that in the cited cases the taxpayers made errors in their treatment or characterization of a transaction in their original return but that due to the circumstances had no occasion to make a proper election. The courts allowed the taxpayers to correct their election, holding that only when the correct treatment of the transaction was recognized did the parties have an opportunity to make a conscious choice. *Mamula,* 346 F.2d at 1018–20, *Gentsch,* 151 F.2d at 999–1000. In response, defendant presented evidence that plaintiff had knowledge of its election options as witnessed by a 1959 memorandum by T.B. Havens, plaintiff's Supervisor of General Accounting, discussing the Manufacturers Federal Excise Tax. Mr. Havens, one of the officials responsible for making an election under section 4223(b), stated: "Painting or packaging are not to be considered a

'further manufacture' item if this is our only additional operation on the part before sale." Indeed, packaging was the only operation involved with the kits in question. Based on Mr. Havens' memorandum, defendant claimed that plaintiff recognized at the outset that labor associated with packaging did not necessarily constitute further manufacture and thus packaged articles could be taxed on their purchase price. Defendant argued that the memorandum would defeat plaintiff's lack of knowledge claim.

After reviewing the briefs and all documentary evidence, the court finds that plaintiff knew or should have known of the qualifications for a Section 4223 election. If plaintiff was not put on notice by its own staff's memorandum, it still had a duty to know and understand the law. Lack of knowledge is not an excuse for failing to choose the most profitable option when two valid options are available for computing taxes. See *J.E. Riley Inv. Co. v. Commissioner*, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36 (1940). Moreover, the three cases cited by the plaintiff are distinguishable. In all three instances, the method used by the plaintiffs' was incorrect: in *Maid–Rite* the taxpayers erroneously claimed an investment tax credit when they were not eligible for one; in *Mamula* the method elected by the taxpayers was simply invalid; and in *Gentsch* plaintiffs incorrectly assumed that no foreign tax was due and thus did not take a foreign tax credit. In the present case plaintiff inadvertently elicited to have its kits taxed on the selling price, which was a valid option, not an invalid election as in the cited cases. The excise tax could be correctly assessed two different ways. Since plaintiff knew or should have known of the election and failed to act on it, plaintiff may not now collect a refund for failing to make an appropriate corporate decision.

Plaintiff argued that it made a valid election after it was aware of its options in 1982, and that the implementation of that election was made when it filed refund claims for the quarters in question. Plaintiff reiterated that since the election had not been made in its previous returns, that choice could later be made in amended returns. *Reaver v. Commissioner*, 42 T.C. 72, 81 (1964); *Bayley*, 35 T.C. at 298. Plaintiff, however, presented its requests in claims for refund instead of amended returns, as required by 26 U.S.C. § 4223(b). Plaintiff argued that the refund claims should be construed as amended returns since they provided all the information that would have been found in the amended returns. Moreover, plaintiff asserted that the form of election was not important; all that mattered was whether it "made an honest mistake and rectified it at the first opportunity." *See Reaver*, 42 T.C. at 81. Defendant countered that a claim for refund could in no way be viewed as a return, amended or otherwise. Defendant stated that claims for refund do not report "the tax applicable to the sale or use of an article" as required by a Section 4223(b) election. Instead, they seek to adjust a tax that has already been reported in a return. In addition, defendant maintained that claims for overpayment of the manufacturers excise taxes were to be submitted on a specified form and filed at a time different than that prescribed for filing returns. To further counter plaintiff's position, defendant cited *Jones v. United States*, 213 Ct.Cl. 529, 553 F.2d 667 (1977), where a partnership was required to file a 26 U.S.C. § 754 (1982) election with its partnership return for the taxable year in which the election applied. The Court of Claims held in *Jones* that to make a valid election, the election must be made in the original return or by an amended return filed within the statutory time for filing the original return. The statute in *Jones*, similar to section 4223, specifically stated that the election must be made "in the return." The Court of Claims in *Gindes v. United States*, 228 Ct.Cl. 632, 661 F.2d 194 (1981), dismissed plaintiff's attempt to make an election in a claim for refund when an election was required to be made in a return or amended return. Defendant concluded that this same situation occurred in the case at bar and that plaintiff should similarly be barred.

■ An affirmative election under 26 U.S.C. § 4223(b) must be made "in the return reporting the tax." The court finds that plaintiff's claims for refund cannot possibly constitute a return reporting the tax, and thus an election in a claim for refund does not satisfy the requirement of section 4223. This is not a substance over form analysis. The law is very specific in requiring amended returns, and a claim for refund is not sufficient. Although plaintiff argued that *Jones* and *Gindes* are not applicable because they did not involve "a misclassification or erroneous treatment of a transaction; [but rather instances where] the partnership simply failed to follow the regulations," the court finds that *Jones* and *Gindes* are applicable in principle. This is simply a case where plaintiff did not comply with statutory requirements. Furthermore, claims for overpayment of the manufacturers excise tax are required to be filed on a Form 843˙Claim "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511 (1982). The court notes that the first ten of plaintiff's twenty claims were filed outside the requisite time frame and thus would normally be precluded. In any event, since plaintiff failed to make the proper election in an amended return, as required by statute, it is not eligible to receive its requested refund.

Plaintiff, in its second argument, contended that a mistake had been made in implementing its tax accounting procedure, and thus it should be able to correct that mistake and collect a refund. Plaintiff alleged that its original intent was to elect the purchase price option for its kits. In furtherance of that intent plaintiff reportedly made a blanket election under section 4223(b)(2), allowing all articles purchased tax free and sold without further manufacture to be taxed at the purchase price. Plaintiff's officials decided to elect tax liability based on the purchase price of the kits under section 4223, but that instruction was not carried out correctly by its data processing department. Plaintiff concluded that it had thus made a choice, but was frustrated in implementing it and should

now be allowed to recompute the tax according to its original intent. Defendant took issue with the statement that plaintiff had technically made a mistake. According to defendant, plaintiff had simply failed to choose the least costly option when it computed its excise tax liability. Defendant pointed out to the court that plaintiff had two equally valid options before it and making a choice of one or the other could not be considered a mistake even if it later turned out to have been the wrong selection. *Pacific Nat'l Co. v. Welch*, 304 U.S. 191, 192–94, 58 S.Ct. 857, 859–60, 82 L.Ed. 1282 (1938). Plaintiff was not required by the law to choose the purchase price election; it merely had the opportunity to do so. That opportunity, defendant argued, was lost for the tax period when plaintiff did not elect the purchase price option of section 4223(b)(2) in its return reporting the tax. Defendant concluded that since plaintiff failed to make a proper election, it could not retroactively do so now.

■ While the court recognizes that plaintiff may have made a mistake, the court nonetheless believes that plaintiff is not entitled to retroactively recompute its tax liability. Plaintiff used its system for twenty-three years, yet only recently recognized its "mistake." Plaintiff had two valid tax options available to it in 1959 and its awareness of those options was evident. Even had plaintiff made a mistake, it nevertheless failed to make evident its election in 1959, and thus the kits would have been taxed on their selling price notwithstanding plaintiff's unexpressed intent. Plaintiff argued that defendant tacitly acknowledged plaintiff's election when defendant audited plaintiff's books and accepted plaintiff's accounting methods. The court finds, however, that a review of records does not constitute acceptance of an election. The IRS had no duty to inform plaintiff of the purchase price election. An intention is meaningless if it is not communicated. The IRS is many things, but it is not prescient. Plaintiff would have had to have notified the IRS that it elected to be taxed on the purchase price in order to qualify for the benefits thereunder. Plain-

tiff's mistake was not in making its election, but in failing to make a valid election. For an election to be valid, it must be "made in the return reporting the tax applicable to the sale or use of the article, and may not be revoked." 26 U.S.C. § 4223(b). The Manufacturers and Retailers Excise Tax Regulations, 26 C.F.R. § 48.4223–1(c)(2) (1987), provides further that the election must be made in the form of a statement attached to the return reporting the applicable tax. The statement invoking the election should describe the article or class of articles. Plaintiff may have thought it made a tax election for the kits, but there is no extrinsic evidence that the election was actually made. Plaintiff was unable to produce any return evidencing a formal or blanket election to be taxed at the purchase price. Since plaintiff did not follow the necessary procedural guidelines to make a formal election, it may not claim retroactive benefits. Plaintiff's claims must therefore be denied.

### CONCLUSION

The court finds that plaintiff failed to make a proper election under 26 U.S.C. § 4223(b) to compute excise tax on the purchase price of the kit parts. It is apparent from the facts that plaintiff was aware or should have been aware of its tax options, and should have acted accordingly. The court finds further, contrary to plaintiff's belief, that claims for refund are not the same as amended returns and cannot be treated as such. Finally, plaintiff's allegations of "mistake" are not sufficient to waive statutory requirements. Since the proper procedural prerequisites for a refund were not met, plaintiff cannot be granted an election retroactively. For these reasons, defendant's motion for summary judgment is granted and plaintiff's motion is denied. The Clerk is directed to enter judgment dismissing the complaint. Costs.

IT IS SO ORDERED.